ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Chief, Criminal Division

MAIA T. PEREZ (MABN 672328)
Assistant United States Attorney
    150 Almaden Blvd., Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    Facsimile: (408) 535-5066
    Email: maia.perez@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 19-00379 EJD |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| BRYAN MCKNIGHT, | Date: June 27, 2023<br>Time: 11:00 a.m. |
| Defendant. | The Hon. Edward J. Davila |

The United States of America, through Ismail J. Ramsey, United States Attorney for the Northern District of California, and Maia T. Perez, Assistant United States Attorney, hereby submits the following sentencing memorandum for the Court's consideration.

**I.  INTRODUCTION**

On April 7, 2019, defendant Bryan McKnight (Defendant) was found in possession of two fully loaded semi-automatic handguns, a large quantity of cash, narcotics, and indicia of drug trafficking. At the time he possessed the weapons, Defendant had previously sustained multiple felony convictions for firearms and crimes of violence.

On August 15, 2019, defendant Bryan McKnight (Defendant) was indicted by the Grand Jury on two counts of being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1).  Following his release on Pretrial Supervision, Defendant was twice arrested for being a Felon in Possession of a Firearm and Ammunition in two additional cases.

On April 3, 2023, Defendant pled guilty to Count One of the Indictment pursuant to a plea agreement.  Defendant is scheduled to be sentenced before this Court on June 27, 2023.

The government joins the U.S. Probation Office in recommending a sentence of 46 months imprisonment and three years supervised release.  Defendant has proven his total disregard for court orders and the law itself, on multiple occasions and after repeated admonishments.  Defendant's continuous access to and possession of loaded firearms in the presence of children and with various narcotics, even while on pretrial release in this case, present a serious threat to public safety and need for deterrence.  This recommended sentence is sufficient, but not a greater punishment than necessary, to achieve the goals of 18 U.S.C. § 3553(a).

**II.    BACKGROUND**

**A.    Offense Conduct**

On April 7, 2019, Defendant was driving a rental vehicle with two passengers in San Jose, CA. PSR ¶ 9.  Police initiated a traffic stop after observing Defendant fail to obey a stop sign and exceed the legal speed limit.  *Id.*  Defendant advised he was on active parole and a records check revealed Defendant was on active parole for assault with a deadly weapon (firearm).  *Id.*  Officers removed Defendant and the two passengers from the vehicle in order to conduct a parole search of the vehicle.  *Id.* ¶¶ 10-11.

In a brown and tan checkered backpack in the backseat of the vehicle, officers found a Glock semiautomatic handgun with a high capacity magazine loaded with 22 rounds, including one in the chamber, (first firearm photo below) and a second handgun with a high capacity magazine loaded with 14 rounds, including one in the chamber (second firearm photo below).  *Id.* ¶ 11.  The backpack also contained approximately 210 grams of marijuana, a scale, and a measuring cup full of marijuana residue. *Id.*  Officers noted that the backpack also contained Defendant's wallet, Defendant's driver's license and credit cards, and a bottle of antibiotics prescribed to Defendant.  *Id.* ¶ 12.  Officers did not find any evidence in the backpack of any other individual's ownership or possession of the backpack or its

contents.   Evidence views of the backpack were conducted in January 2020 (with Defendant) and June 2023, during which the backpack was also determined to contain beard oil, a gate pass issued to Defendant, and several Inmate Priority Passes in Defendant's name from prior years.  Ex. 1, *FBI 302* (received 6/20/23).  Body camera video from the arrest shows that Defendant was the only person in the car who sported a full beard.






UNITED STATES' SENTENCING MEMORANDUM
CR 19-00379 EJD

3

### B.     First Pretrial Release Violation

On March 24, 2021, Pretrial Services issued a violation memorandum after Defendant missed a scheduled Zoom video call. Ex. 2, *3/24/21 Pretrial Violation Memo*. Defendant later informed Pretrial Services he did not have an excuse for missing the previously scheduled meeting. *Id.* The memorandum further noted that a mental health counseling condition had been added to Defendant's pretrial release conditions, but Defendant had some conflict with the therapist and it was agreed he would be seen by a different therapist. *Id.* Defendant met with another therapist but did not wish to proceed with counseling due to the fact that the therapist provided information to Pretrial Services regarding his treatment. *Id.* The Pretrial Services officer attempted to alleviate his concerns and explained Pretrial needs to be able to confirm his participation and progress. *Id.* Nevertheless, Defendant did not proceed with treatment and mental health treatment was removed from his bond conditions. ECF 26.

### C.     Second Pretrial Release Violation

On June 11, 2021, Pretrial Services issued another violation memorandum. Defendant had been arrested by the Sacramento Police Department on May 3, 2021, for being a Felon in Possession of a Firearm and Ammunition. Ex. 3, *6/11/21 Pretrial Violation Memo;* PSR ¶ 37.

The Sacramento police report stated that the woman who contacted the police advised that she met Defendant on a dating app and he came to her apartment. Ex. 4, *Sacramento Subject Statement*. When he arrived, she noticed he had a gun. *Id.* While they were having sex, he asked her "how it felt to have sex with a killer." *Id.* The woman stated that Defendant "kept messing with the gun and moving it," and tucked it on the side of the bed. Ex. 4. Later, Defendant saw the woman's spare key on her counter and told her she should give it to him. *Id.* She said no, and he told her again to give it to him. *Id.* She left the apartment and called the police. *Id.* Police discovered a Springfield Armory handgun loaded with six live rounds and one live round in the chamber in the trash room across the hall from the woman's apartment. PSR ¶ 37. The woman told police it was the firearm she saw in Defendant's possession. *Id.* Following his arrest, Defendant submitted a victim statement claiming that the woman was a prostitute who drugged him, took his Louis Vuitton shoulder bag and some other belongings, and when he awoke she was gone and police were there. *Id.*

1   The Pretrial Services officer reviewed the police report and Defendant's statement.  The Pretrial
2   Services officer "question[ed] the validity of McKnight's statements" noting that, "[a]t best, he
3   demonstrated questionable decision making."  Ex. 3.

4   On June 15, 2021, the Magistrate Court held a bail violation hearing where Defendant was
5   admonished regarding his conditions of release.  ECF 30.

### D.  Third Pretrial Release Violation

On March 14, 2022, Pretrial Services issued another violation memorandum.  Defendant had been arrested in San Jose on March 9, 2022, for possession a Loaded Firearm in Vehicle or Public, Carrying a Concealed Firearm, Felon in Possession of a Firearm and Ammunition, Resisting an Executive Officer, Possession of Counterfeit Items, Resisting Arrest, Unlicensed/Unregistered Carrying of a Concealed Firearm, and Possession of a Controlled Substance while Armed.  PSR ¶ 38; Ex. 5, *3/14/22 Pretrial Violation Memo*.

Specifically, Defendant was stopped for traffic violations while driving with two passengers at 2:24am at night.  *Id.*  Defendant had a black and grey checkered Louis Vuitton shoulder bag strapped to his person.  *Id.*  Officers asked Defendant if he had any weapons on him and he stated he did not have any weapons.  Ex. 6, *3/9/22 SJPD Report*, at 1.  After he declined to consent to a search of the bag, officers attempted to remove the bag from his person but he began to make furtive movements with his hands.  *Id.*  As the bag was removed, Defendant became more combative with additional furtive movements and officers attempted to place Defendant in handcuffs for officer safety concerns.  *Id.*  Defendant then pushed away from officers, attempted to grab the shoulder bag, and ran approximately 20 feet across open lanes of traffic.  *Id.*  Three officers pursued Defendant and attempted to apprehend him but he continued to actively resist.  *Id.*  Defendant was ultimately placed in custody and his bag was searched.  *Id.*  Officers discovered a Springfield Armory semiautomatic handgun and heroin in Defendant's Louis Vuitton shoulder bag that had been strapped to his person.  *Id.* at 2.  The handgun was fully loaded with one round in the chamber for a total of ten rounds and came back as unregistered in the California Automated Firearms System.  *Id.*  A search of Defendant's vehicle also found blue pills consistent with "highly deadly fentanyl," and other narcotics, as well as three counterfeit one hundred dollar bills.  *Id.*  The rear passenger that Defendant had been driving at 2:24am was identified as a 14

year old girl who had been reported missing multiple times; police notified Special Victim Human Trafficking. *Id.*; Ex. 5 at 2. Defendant's possession of the shoulder bag containing the firearm and his flight from police were recorded on police body camera video and produced in discovery in this case.

Following this arrest, Pretrial Services determined that Defendant poses "a significant risk of danger" and recommended that his bond be revoked:

> "McKnight has continued to engage in illegal behavior and appears to be a serious danger to the community. He is currently on Pretrial release for possession of a firearm, yet he has not been charged in two new cases involving possession of a firearm. He was also found in possession of illicit substances and had a missing juvenile in his custody without the knowledge of her parents. It is also very concerning that McKnight resisted arrest and fought with officers, attempting to obtain his satchel bag with a loaded firearm inside . . .
>
> McKnight has clearly proven that he has a complete disregard for the Court's orders or the law itself . . . [W]e do not find that there is anywhere in the community that would mitigate our concerns about the danger McKnight poses.
>
> Additionally, McKnight had not previously reported a substance abuse issue that would necessitate residential treatment, and any potential use of substances does not explain the repeated possession of firearms or what he was doing with a missing 14-year-old child.
>
> Lastly, McKnight's criminal history of violence is extremely concerning. . . "

*Id.* at 2-3.

On March 16, 2022, Judge Susan van Keulen revoked Defendant's pretrial release and ordered Defendant to self-surrender, which he did. ECF 45. The Magistrate Court found that "there are no conditions that will assure Defendant will not pose a danger to the community in light of the facts that this is the second violation arising from possession of a loaded firearm and that Defendant not only attempted to flee from police but also engaged in a physical altercation with officers." *Id.* at 2.

### III. SENTENCING GUIDELINES

#### A. Offense Level Computation

The Probation Office's calculation of Defendant's base offense level is 22, for sustaining this conviction following a felony convictions for a crime of violence and because this offense involved a semiautomatic firearm capable of accepting a large capacity magazine. PSR ¶ 18. The Probation Office's calculation does not include any enhancement for possessing the firearm in connection with any other felony offense. The government concurs with the Probation Office's calculation. With acceptance of

responsibility, the total offense level is 19.  *Id.* ¶¶ 18-27.

### B. Applicable Sentencing Guideline Range

The government agrees with the Probation's Office's calculation that Defendant has seven criminal history points, placing Defendant in Criminal History Category IV.  *Id.* ¶ 35.  This results in a Guidelines range of 46 to 57 months.

## IV. SENTENCING RECOMMENDATION

Defendant's history and the circumstances of the offense contain both mitigating and aggravating circumstances.  The government sympathizes with Defendant's difficult childhood.  However, his past circumstances are outweighed by Defendant's present threat to public safety, his extensive and violent criminal history, and his repeated disregard for court orders and the law.

As Pretrial Services noted in recommending revocation of his release, Defendant's "criminal history of violence is extremely concerning" and his continuous illegal behavior presents a serious danger to the community.  Ex. 5 at 2.  Defendant was sentenced to 12 years in prison for two separate armed robberies involving firearms in 2006, for which he was convicted of two felony counts of Robbery: Second Degree – Used Firearm, and one count of Assault Person with Semi-Automatic Firearm.  According to the PSR, Defendant served 11.5 years of his 12-year sentence.  PSR ¶ 49. Following his parole in 2017, Defendant was convicted of a misdemeanor Assault with Deadly Weapon: Not Firearm in 2017.  He was still on probation in both prior criminal cases when he committed the instant offense where he possessed two fully loaded firearms and high capacity magazines, marijuana and indicia of sales, and $2,800.  Three months after his arrest in the instant case, Defendant was arrested and later convicted of Obstructing a Public Officer.  He was still on Probation from that conviction and on Pretrial supervision in the instant case when Defendant was again arrested in May 2021 for being a Felon in Possession of Firearm and Ammunition in the pending Sacramento felony case.  Even after he was admonished of his pretrial conditions by the Magistrate Court, Defendant again was arrested in March 2022 for possessing a fully loaded firearm on his person, in the presence of a child and with heroin and suspected fentanyl, and attempting to fight with and flee from police.  For this conduct, Defendant has pending charges for Possession of a Controlled Substance While Armed, Carrying a Concealed Weapon – Loaded not Registered, Carry Concealed Weapon in Vehicle,

UNITED STATES' SENTENCING MEMORANDUM
CR 19-00379 EJD

Obstructing/Resisting Executive Officer, Possess Blank Check: Defraud; Prohibited Owner Ammo; Carry Loaded Firearm: Prior Felony Conviction, and Obstructing Public Officer. While the latest case is a separate prosecution for conduct unrelated to the instant matter, it is not clear whether the sentence in that case will run concurrently or consecutively with the sentence in this case. ECF 66 at 6-7.

The government recognizes Defendant grew up in difficult circumstances surrounded by drugs and crime. Many individuals have spent their youth in similar circumstances and have grown up to be nonviolent, productive members of society. Defendant is now a 35-year-old father of three, a grown man who has been capable of forging his own path for many years now, and yet he still chooses to this path of serious crime and violence.

Defendant's representations in the PSR largely focus on how Defendant has been impacted by those around him. But there is no discussion of how Defendant and his continued criminal behavior have negatively impacted others, particularly the children and young adults in his life. In the instant offense, the rear passenger in Defendant's vehicle was a young man named Darius Gipson. Gipson was 19 years old, had no known felony convictions, and was not on any known search conditions. But because Gipson took hold of Defendant's backpack at one point during the traffic stop, he was charged with jointly possessing the firearms and marijuana along with McKnight. PSR ¶ 11, fn. 2. Gipson pled guilty to Possession of an Assault Weapon, a felony, and Carrying a Loaded Firearm on the Person or in a Vehicle, Possession for Sale of Cannabis, and Sale, Transportation and Distribution of Cannabis. *Id.* It is not clear why Gipson took hold of Defendant's backpack during the stop, but shortly after the search and arrest, Defendant told police that he thought law enforcement could not legally search people who were not on parole or probation.[1]

Defendant portrays himself as a loving father of three minor children who spends his free time with his kids "as often as possible," shares responsibilities with their mothers, goes bowling and visits his elderly relatives. PSR ¶¶ 51, 56. But his conduct in this case tells a very different story of a man

---

[1] Defendant stated, in sum and substance: "I definitely felt like you guys could not search people that wasn't on no parole or probation. I definitely did think that. . . . I definitely felt like that. I mean, shit. I really still think like that. . . . I'm talking about as far as . . . yeah, legal-wise . . . I thought that was illegal." Ex. 7, Body Worn Camera Video, Bates 000249, at 1:01:10-1:01:47.

UNITED STATES' SENTENCING MEMORANDUM
CR 19-00379 EJD

who spends his free time with prostitutes in Sacramento, who drives around San Jose day and night with fully loaded firearms and various drugs while accompanied by other individuals who are similarly armed, and who sometimes brings along a young teenage girl or young adult male so they are exposed to this lifestyle, too. Defendant's continuous possession of loaded firearms, his consistent access to a variety of drugs, his constant association with other armed individuals, and his other criminal and concerning behavior present an extreme danger to his minor children to the extent they are actually in his care.

Defendant also blames drug use and mental health issues for his consistent criminal conduct. While Defendant was found in possession of several narcotics during the course of this case, Pretrial Services noted that he never reported a substance abuse issue that would necessitate residential treatment. Ex. 5. Even if he had, as the Pretrial Services officer pointed out, "any potential use of substances does not explain the repeated possession of firearms or what he was doing with a missing 14-year-old child." *Id.* Defendant was also provided mental health counseling during his release, but he had a conflict with one therapist and refused treatment by another, such that mental health counseling was removed as a condition of his release. If Defendant is truly committed to sobriety and mental health counseling, he can take advantage of BOP rehabilitation programs that will ensure his participation and progress while also keeping the public safe.

The danger Defendant presents to those around him and to the community at large cannot be ignored. His continuous possession of loaded firearms, his history of using firearms to assault and rob others, and his demonstrated willingness to obstruct and resist law enforcement make Defendant a very real threat to public safety. Defendant's total disregard for court orders and the law itself, on multiple occasions after repeated admonishments, and his repeated probation violations, further demonstrate that Defendant is not amenable to supervised release, and there is no reason to believe he will abide by any court-imposed release conditions in the near future.

For the foregoing reasons, a Guidelines sentence is necessary to achieve the goals of 18 U.S.C. § 3553(a): to reflect the seriousness of Defendant's conduct, to deter him from additional and future crimes, to protect the public from further crimes of Defendant, and to provide Defendant with

correctional treatment in the most effective manner. Accordingly, the government joins in the Probation Office's recommendation of 46 months' imprisonment and three years supervised release.

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

Dated: June 20, 2023         _____/s/_____
                             MAIA T. PEREZ
                             Assistant United States Attorney